1

District Judge Benjamin H. Settle

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10 | RICK OLMTEAD,

CASE NO. 3:13-cv-05051-BHS

11

Plaintiff,

DECLARATION OF
ROGER RAY GEHRING

12

v.

13 | RAY MABUS,

Defendant.

14

15

I, ROGER R. GEHRING, declare under penalty of perjury, as provided by 28 U.S.C.

16 § 1746, that the following is true and correct to the best of my knowledge:

17   1.   I am currently employed by the United States Navy, at the Puget Sound Naval

18        Shipyard and Intermediate Maintenance Facility, Bremerton, WA ("Shipyard"). I
         have been employed at the Shipyard for 26 years. My current position is General

19        Foreman (Supervisor II) in the Pipefitter Shop (Shop 56). I have been a

20        supervisor for 15 years. My date of birth is October 21, 1967.

21   2.   The Pipefitter Shop (Shop 56) has a sizable group of Foremen (Supervisor I) and

22        General Foreman (Supervisor II). Workload varies, so supervision is comprised
         of both permanent supervisors and temporary supervisors. More supervisors are

23        needed when there are more work crews. Temporary supervisors typically revert

24        back to their non-supervisory grade when workload decreases. Lately, this has
         not happened in our shop as the work has been steady. A temporary promotion

25        cannot exceed one year, but can be extended by new personnel action.

26   3.   A temporary promotion is done competitively, extensions are administrative and

27        do not require a new competition. In my experience the order of events to make

28        up a competitive selection for these positions is, basically: (1) announcement of a

Declaration of ROGER R. GEHRING
3:13-cv-05051-BHS

1

2

3

4

5

vacancy, (2) a review of the applicants by a regional personnel office that results in a certificate of highly qualified candidates, (3) a rating of those candidates by a group of supervisors (the group is selected informally, mostly depending on who is available), (4) a comparison of the ratings, and (5) a final selection by the proper authority (for example the Nuclear Director for all nuclear qualified positions).

6

7

8

9

4.     Selections, mostly temporary, are not uncommon, and I have done ratings as part of the selection process about seven or eight times. In early February, 2012, I was asked to rate a group of candidates from a highly qualified certificate for a temporary General Foreman (Supervisor II) position. The rating matrix is provided to each rater. The matrix contained the following list of attributes to rate:

10

11

**Safety** (Promotes safe work practices)

**Job Knowledge and Experience** (Process Knowledge, Technical Requirements)

12

13

**Leadership Skills** (Decision making, Accomplish work through others, Accepts the Role, Initiative)

14

15

**Dependability** (Attendance, Reliability and Knowledge)

16

**Supports Management Decisions** (Attitude, Ability to Administer Discipline, Policies, Team Player)

17

18

**Organizes Self, Others, and Workplace** (Attention to detail, Planning, Productivity, Manages Assignments Effectively)

19

**Verbal and Written Communication Skills**

20

**Manage Human Resources** (Training, Physicals, and Travel)

21

**Flexibility** (Manage Change, Priorities, Shifts and Travel)

22

**Mentor Skills** (ability to pass along to employees work ethics, training, etc.)

23

24

25

26

27

28

5.     The list of candidates to rate included: Robert Brown, Erin Cook, Russ Geier, Marty Boykin, and Rick Olmstead. I rated each candidate based on my knowledge of their skills. As would be expected, I was more familiar with some candidates than others, but all of my ratings were my own. The raters do not meet to discuss the candidates, this is meant to be an independent assessment. The raters do not interview the candidates for internal promotions (where all candidates already work for the Shipyard).

Declaration of ROGER R. GEHRING
3:13-cv-05051-BHS

6.    All of my ratings were honest and related only to the criteria in the rating matrix. I did not consider any other factors. I know each of the candidates well enough to guess their approximate ages, but I did not know any ages specifically. But, age was not a factor in my ratings in any way, not even the person's approximate age.

7.    A selection for this temporary promotion was made later in February, 2012, the selected candidate was Erin Cook. I was not surprised by this selection, as I had rated her my second highest candidate for the promotion. The person I rated as best qualified was Mr. Geier. But, I rated the two of them very close, the average rating for Mr. Geier was 3.5 and for Ms. Cook it was 3.45. I rated Mr. Olmstead as the lowest of this group of candidates at 2.9.

8.    I recall nothing unusual about this rating process, this occasion was the same as the other ratings I have performed. I did not hear any comments related to the candidates ages, or any other improper factors, and I would not have expected to.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 21st day of January, 2014.

ROGER R. GEHRING

Declaration of ROGER R. GEHRING
3:13-cv-05051-BHS